UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J<small>EFF</small> W<small>AGNER</small>,

    Plaintiff,

    v.

J<small>OHN</small> I<small>FEDIORA</small>,

    Defendant.
_____/

Case No. 20-cv-12293

U.S. D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
   G<small>ERSHWIN</small> A. D<small>RAIN</small>

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [#9] AND FINDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#18] MOOT**

**I. I<small>NTRODUCTION</small>**

On August 25, 2020, Plaintiff Jeff Wagner filed the instant action against Defendant John Ifediora. ECF No. 1. Plaintiff subsequently filed his First Amended Complaint on August 28, 2020 and alleges six state law claims against Defendant, including for embezzlement, breach of contract, and negligence. ECF No. 4. Plaintiff seeks an award of compensatory and punitive damages as a result. *Id.*

Presently before the Court is Defendant's Motion to Dismiss. ECF No. 9. The matter is fully briefed. *See* ECF No. 22, 23. Also before the Court is Plaintiff's Summary Judgment Motion, ECF No. 18, to which Defendant filed a Response, ECF No. 19. A hearing on these matters was held on August 13, 2021. For the reasons discussed below, the Court will GRANT Defendant's Motion to Dismiss [#9] for

1

lack of personal jurisdiction and find MOOT Plaintiff's Motion for Summary Judgment [#18].

## II. FACTUAL BACKGROUND

The instant action stems from the parties' involvement in an immigrant investment program in 2014. Plaintiff Jeff Wagner is a resident of Lansing, Michigan. ECF No. 4, PageID.114. Defendant John Ifediora is a current resident of Washington, DC. *Id.* Plaintiff states that "[a]t all times relevant to this complaint Ifediora resided in Madison, Wisconsin." *Id.*

Plaintiff states that he was "running an EB5 investment center in Detroit, MI named the Detroit Immigrant Investment Regional Center (DIIRC)[.]" ECF No. 4, PageID.113. Defendant explains that the EB-5 program, which is also referred to as the Immigrant Investor Program, "can provide a path to permanent residency for immigrants who invest a certain amount of money in a new business if that investment creates at least 10 full-time jobs in the United States." ECF No. 9, PageID.238. In this program, investors may choose to invest in United States Customs and Immigration Services ("USCIS")-approved regional centers, including the DIIRC run by Plaintiff at the time the instant dispute arose. In 2014, an individual named Osita Aboloma, Defendant's cousin and a non-party in this action, sought to invest in a corporation through the EB-5 program and gain United States citizenship through these means. ECF No. 4, PageID.113.

Specifically, Defendant states that he assisted his cousin in finding a "suitable company to invest in for purposes of obtaining an EB-5 immigrant visa," and engaged in discussions with Rajan Vembu, the CEO of a company called U.S. Foods & Pharmaceuticals, Inc. ECF No. 9, PageID.239. U.S. Foods & Pharmaceuticals is a Wisconsin-based company that was seeking to relocate a portion of its business to Detroit, Michigan. ECF No. 4, PageID.113. Defendant states that he spoke with Vembu, who is also not a party to this case, about the business investment and EB-5 application costs for Defendant's cousin. ECF No. 9, PageID.239. Ultimately, Aboloma—with the procedural assistance of Defendant—paid U.S. Foods & Pharmaceuticals for the business investment costs, and the EB-5 application was set to be processed by Plaintiff's regional center, DIIRC. *Id.* at PageID.240.

The instant dispute concerns the payment of the $57,000 EB-5 processing fee between Plaintiff and Defendant as a representative of his cousin. Plaintiff states that he and Defendant spoke once over the phone regarding the DIIRC and emphasized that Defendant was required to pay the $57,000 to Plaintiff as the operator of the EB-5 regional center. ECF No. 4, PageID.114. Defendant states, however, that because he was "unable to verify that Plaintiff was the owner" of the DIIRC, he "did not feel comfortable utilizing" Plaintiff's DIIRC for the processing of the EB-5 application. ECF No. 9, PageID.240. Thus, Defendant did not pay the $57,000 fee to Plaintiff. Ultimately, the EB-5 application for Defendant's cousin

3

was submitted on December 22, 2014, without the use of the DIIRC. ECF No. 9, PageID.240. The application was denied by USCIS on January 12, 2018. *Id.*

Following the denial of his EB-5 application, Aboloma filed suit against Plaintiff, Defendant, Vembu, and U.S. Food & Pharmaceuticals in the Western District of Wisconsin in 2019. ECF No. 4, PageID.114; ECF No. 9, PageID.240-241. Plaintiff states that he was made aware as a result of this litigation that Defendant purportedly "embezzled money from him and converted it to his own use." ECF No. 4, PageID.115. The parties ultimately reached a settlement in that matter and the case was dismissed with prejudice on September 4, 2020. ECF No. 9-1, PageID.276.

Plaintiff filed the instant matter against Defendant on August 25, 2020. ECF No. 1. He filed his First Amended Complaint on August 28, 2020. ECF No. 4. Plaintiff alleges six claims against Defendant: (1) Misrepresentation and Fraud (Count I); (2) Embezzlement (Count II); (3) Conversion (Count III); (4) Punitive Damages (Count IV); (5) Breach of Contract (Count V); and (6) Negligence (Count VI). *See* ECF No. 4. Plaintiff seeks the award of compensatory and punitive damages. *Id.*

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden

of establishing personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). In the face of a motion to dismiss pursuant to Rule 12(b)(2), a plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *GM L.L.C. v. Autel.US Inc.*, No. 14-14864, 2016 U.S. Dist. LEXIS 40902, at *7 (E.D. Mich. Mar. 29, 2016) (internal citation and quotation marks omitted); *see also Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Plaintiff must meet his burden to make a *prima facie* showing of personal jurisdiction by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 573 F. App'x 427, 429 (6th Cir. Jul. 21, 2014). A district court must construe the presented facts in the light most favorable to the non-moving party and "may not consider conflicting facts offered by [the moving party]." *GM L.L.C.*, 2016 U.S. Dist. LEXIS 40902, at *7–8 (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)).

### III. DISCUSSION

Defendant Ifediora seeks dismissal of Plaintiff's First Amended Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because he lacks

sufficient minimum contacts with the state of Michigan to support this Court's exercise of limited personal jurisdiction. The Court agrees with Defendant.

In order to determine whether personal jurisdiction exists, a district court typically engages in a two-step inquiry analyzing whether the forum's long-arm statute and the Due Process Clause permit the exercise of personal jurisdiction. *See Bird v. Parsons*, 289 F.3d 865, 871(6th Cir. 2002); *see also Lak, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1298 (6th Cir. 1989) (the federal court must "look to the law of the forum state to determine the district court's '*in personam* jurisdictional reach.'") (quoting *So. Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 375 n.2 (6th Cir. 1968)).

In this case, Michigan's long-arm "statute confers on the state courts the maximum scope of personal jurisdiction permitted by the due process clause of the Fourteenth Amendment." *Chrysler Corp. v. Fedders Corp*., 643 F.2d 1229, 1236 (6th Cir.), *cert. denied*, 454 U.S. 893 (1981). Thus, "the two [jurisdictional] inquiries merge and the Court need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process." *Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1988) (internal quotation marks and citation omitted); *see also Intera Corp. v. Henderson,* 428 F.3d 605, 615 (6th Cir. 2005)*; Zellerino v. Roosen*, 118 F. Supp. 3d 946, 950 (E.D. Mich. 2015) ("Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed

by federal constitutional Due Process requirements, and thus, the two questions become one.") (citations omitted).

Therefore, resolution of Defendant's present Motion turns on whether exercise of personal jurisdiction comports with his federal due process rights. *Lifestyle Lift Holdings, Inc. v. Prendiville*, 768 F. Supp.2d 929 (E.D. Mich. 2011) (citing *Chandler v. Barclays Bank PLC*, 898 F.2d 1148, 1150 (6th Cir. 1990); *Bridgeport Music, Inc. v. Still N the Water Pub*, 327 F.3d 472, 477 (6th Cir. 2003)).

Due process requires the following in order for a court to exercise limited[1] personal jurisdiction over a nonresident defendant: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence to occur there; (2) the cause of action must arise from the defendant's activities there; and (3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *See So. Machine Co.*, 401 F.2d at 381. In order to comply with due process, "out-of-state defendants" must "have 'minimum contacts' with the forum state sufficient to comport with 'traditional notions of fair

---

[1] Michigan's long arm statute, which, authorizes the exercise of general personal jurisdiction over non-resident individuals is inapplicable here. *See* MICH. COMP. LAWS § 600.701 (permitting general personal jurisdiction if the individual is either present or domiciled in the state when process is served, as well as if the individual consents and MICH. COMP. LAWS § 600.745 is satisfied).

play and substantial justice.'" *Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (6th Cir. 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Here, Defendant maintains that he has not purposefully availed himself in Michigan and has no substantial connection to the state. ECF No. 9, PageID.242. Specifically, Defendant asserts that he has never resided in or visited Michigan, did not sign any contract with Plaintiff, did not personally invest in U.S. Food & Pharmaceuticals or its pending partial relocation to Detroit, and did not send or deposit money in the forum state. *See id.* Defendant also notes that while he "assisted his cousin, Mr. Aboloma, in investing" in U.S. Food & Pharmaceuticals, "it was Mr. Aboloma who signed that agreement—an agreement to which Plaintiff was not a party to" and Defendant was not a signatory of. ECF No. 9, PageID.242.

In response, Plaintiff emphasizes that Michigan was the location of the investment project, which Defendant was aware of and participated in by assisting his cousin. ECF No. 22, PageID.339-340. Further, Plaintiff argues that it is inapposite whether Defendant deposited money in Michigan; instead, he asserts that Defendant "kept everything in Wisconsin to further control and avail himself of the fraud," demonstrating that "he had no intention of following the laws for the [EB-5] program[.]" *Id.* at PageID.338. Plaintiff additionally avers that Defendant was "contractually obligated to do this business in Michigan" according to the Agreement between U.S. Food & Pharmaceuticals and non-party Mr. Aboloma. *Id.*

8

at PageID.340. Thus, he suggests that because "Defendant essentially signed off on the agreement" and "agreed to those terms by initialing all of the pages" of the agreement, he has "violated an agreement made in and about investing in Michigan on behalf of his client [which] makes him liable in this Court." *Id.*

As an initial matter, Plaintiff's allegations regarding the Agreement are based upon an incorrect interpretation of the parties to the contract. The Agreement, attached as Exhibit B to the First Amended Complaint, is expressly between Mr. Aboloma, as an investor in U.S. Food & Pharmaceuticals, and Mr. Vembu as the president of the company. *See* ECF No. 4-2, PageID.134, 136. While Defendant appears to have initialed the bottom left pages of the Agreement, this alone is insufficient to suggest that Defendant is a signatory or party to this contract, especially given the express provisions of the contractual language. *Id.* Thus, the Agreement cannot be said to create a "substantial connection" to Michigan such that limited personal jurisdiction would be predicated on the basis of the Agreement. *Neogen*, 282 F. 3d at 889 (citing *Burger King* at 471 U.S. at 475).

Moreover, Plaintiff has failed to establish that any other activities by Defendant in this action were sufficiently connected to Michigan. The entirety of the cause of action arises from Defendant's purported failure to give Plaintiff the required EB-5 fees associated with Mr. Aboloma's investment and visa application. However, none of the facts provided by Plaintiff establish that the cause of action

arises from Defendant's activities specifically in Michigan. During the hearing on the matter, Defendant emphasized that he only spoke with Plaintiff once on the phone in a group conference call, and that no funds regarding either Mr. Aboloma's investment or application were ever deposited, by Defendant or anyone else, in Michigan. ECF No. 9, PageID.242. To the contrary, funds were only ever deposited in the state of Wisconsin, where U.S. Foods & Pharmaceuticals is headquartered. *Id.*

Plaintiff avers in his conclusion that "[s]ince the agreements all stated this was a Michigan venture then Michigan is the only legal alternative for this suit." ECF No 22, PageID.351. However, the Court has already noted that Defendant was not a party to the Agreement and that this alleged contact with the forum is also insufficient. The Court finds that it would be difficult to characterize Defendant's relationship to Michigan as anything other than "a result . . . of the unilateral activity of another party or a third person"—specifically Plaintiff and Mr. Aboloma. *Burger King Corp.*, 471 U.S. at 475 (citation omitted).

While Plaintiff also argues that he, as "[t]he aggrieved party[,] is a resident of Michigan," this contact on its own is still insufficient to establish personal jurisdiction over Defendant. ECF No. 22, PageID.351. In *Walden v. Fiore*, the Supreme Court emphasized that the "'minimum contacts' analysis looks at the defendant's contacts with the forum State itself, not the defendant's contacts with the

10

persons who reside there." 571 U.S. 277, 285 (2014). Therefore, a "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*. *Walden* accentuates the need to examine a defendant's contact with a particular forum in order to evaluate personal jurisdiction. Here, Defendant's purported failure to provide Plaintiff with the requisite EB-5 application fees, on its own, cannot establish the necessary connection with Michigan; rather, it demonstrates his connection to Plaintiff who resides in Michigan.

Finally, Plaintiff is required to demonstrate that "the acts of the defendant or consequences caused by the defendant [] have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The rationale for this requirement is that "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant purposefully engaged in forum activities." *Burger King*, 471 U.S. at 477-78. Here, the Court finds that exercise of limited personal jurisdiction over Defendant Ifediora would be unreasonable. There is no contract between the parties; Defendant was not applying to the EB-5 program himself nor was he investing funds in a Michigan venture; Defendant has not deposited any funds in

11

Michigan related to this dispute; Defendant does not own or operate any business in this state; and he has never visited nor resided in the Michigan. Plaintiff has failed to allege conduct that demonstrates Defendant had a substantial connection to Michigan such that traditional notions of fair play and substantial justice would lead him to believe that he might be haled into court in Michigan or that he purposefully availed himself of this forum. *See Chandrasekhar*, 988 F.3d at 907. Therefore, the Court will grant Defendant Ifediora's Motion to Dismiss based on the absence of personal jurisdiction over him.

Accordingly, given this Court's findings regarding personal jurisdiction, Defendant's subsequent arguments addressing the merits of Plaintiff's claims are moot and will not be considered by the Court. Plaintiff's Motion for Summary Judgment is similarly moot.

### IV. CONCLUSION

For the reasons discussed herein, Defendant's Motion to Dismiss [#9] is **GRANTED** for lack of personal jurisdiction. Plaintiff's Motion for Summary Judgment [#18] is accordingly **MOOT**. This case is **DISMISSED**.

**IT IS SO ORDERED.**

s/Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated: August 17, 2021

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 17, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager